IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

MIEKEL LOVE,

    Plaintiff,

vs.                             Case No. 16-1310-JTM

SOUTHLAW, P.C., *et al.*,

    Defendants.

MEMORANDUM AND ORDER

According to her Complaint, plaintiff Miekel Love fell behind on her residential mortgage payments. The loan holder, MidFirst Bank, obtained a judgment on the property, which was sold at a sheriff's sale on January 26, 2016. Love now sues MidFirst and its servicing agent, Midland Mortgage Company, as well as its property manager, Safeguard Properties Management, for conversion, contending that they converted her interest in the residence by assuming control of the property. She contends she had not vacated the residence, as defendants assumed, but "was suffering from severe depression and spending extended periods of time at the home of a friend," and that she "checked on the condition of her home periodically." (Dkt. 1, ¶ 20).[1] Love has also sued SouthLaw, the law firm which brought the foreclosure, under the Fair Debt Collections Practices Act (FDCPA),

---

[1] The plaintiff subsequently dismissed her action against Midland. (Dkt. 35)

as well as its process server, Aristocrat Investigations.

Both Aristocrat Investigations (Dkt. 9) and Southlaw (Dkt. 27) moved to dismiss the action, arguing that they were not "debt collectors" within the meaning of the FDCPA. In addition, Southlaw argued that Love's claim was precluded under the *Rooker-Feldman* doctrine. *See Rooker v. Fidelity Trust*, 263 U.S. 413 (1923). That doctrine bars federal courts from exercising jurisdiction over claims "brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005).

Subsequently, Love filed an Amended Complaint (Dkt. 32), as well as a response to Aristocrat's motion to dismiss. (Dkt. 33). In the foreclosure action, Aristocrat reported that it had been unable to serve Love at the residence, and that the person living at the residence reported he did not know Love. The Amended Complaint contends that Aristocrat's report was wrong, and it should have conducted a diligent inquiry in trying to find her. She also alleges that she had kept some personal property at the residence. She alleges that Southlaw then used Aristocrat's false report to justify service of the foreclosure by publication.

Aristocrat then filed a renewed motion to dismiss (Dkt. 36), while Southlaw moved to dismiss the Amended Complaint under Fed.R.Civ.Pr. 15(a)(1)(B). Both parties repeated their earlier contention that they were not acting to collect a debt within the meaning of the FDCPA, and both argued that the court has no jurisdiction to entertain the action under the

*Rooker-Feldman* doctrine. Ultimately Love filed a separate motion (Dkt. 49) seeking leave to filed a proposed Amended Complaint.

The court finds that plaintiff's claims are inextricably intertwined with the validity of the underlying state court judgment, and that the *Rooker-Feldman* doctrine bars the present action against Aristocrat and Southlaw. For purposes of the doctrine, "[a] claim is inextricably intertwined if the state-court judgment caused, actually and proximately, the injury for which the federal court plaintiff seeks redress." *Tal v. Hogan*, 453 F.3d 1244, 1256 (10th Cir.2006) *cert. denied*, 549 U.S. 1209 (2007).

Both defendants cite the Tenth Circuit's decision in *Crutchfield v. Countrywide Home Loans & Mortg. Elec. Registration Sys.*, 389 F.3d 1144 (10th Cir. 2004), and the court finds that the case strongly supports dismissal of the present FDCPA action.

In *Crutchfield*, the plaintiff brought an action under the Truth in Lending Act (TILA) seeking to rescind his assumption of a mortgage following the mortgagor's death. The district court granted summary judgment to the defendants, finding in part no evidence of a consumer credit transaction which would provide a basis for recission. The Tenth Circuit did not reach the merits of the matter in the subsequent appeal, agreeing with the defendants that in any event such an action was precluded by *Rooker-Feldman* doctrine. The court observed:

> To determine whether a federal plaintiff's claim is inextricably intertwined with a state court judgment we must pay close attention to the relief the plaintiff seeks. *See Kenmen Eng'g v. City of Union*, 314 F.3d 468, 476 (10th Cir.2002). While a litigant may be able to make a federal claim appear unrelated to a state court judgment through artful pleading, the requested

> relief can quickly reveal whether R*ooker–Feldman* applies. Where a plaintiff seeks a remedy that would "disrupt or undo" a state court judgment, the federal claim is inextricably intertwined with the state court judgment.

389 F.3d at 1147-48. *Rooker-Feldman* barred the plaintiff's claim, the court explained, to the extent that it rested on the argument that plaintiff had not received the required notice under state law:

> Mr. Crutchfield appeals the district court's ruling that notice in the state court foreclosure action was proper. *Rooker–Feldman* bars our subject matter jurisdiction to entertain this argument. The District Court for Oklahoma County held that Mr. Crutchfield was personally served with a summons in the manner required by law and that the court "approves the service as meeting the statutory requirements." In response to the Defendants' first motion for summary judgment in federal court, Mr. Crutchfield contended that the state court's holding was contrary to Oklahoma's notice statute. This was, in substance, a request that the federal district court overturn the judgment of the state court, which the federal court may not do. When a state court actually decides an issue, *Rooker–Feldman* prevents federal courts from hearing an appeal of that claim. *Rooker*, 263 U.S. at 415–16, 44 S.Ct. 149. Allowing parallel litigation on the same point of law would invite chicanery from litigants.

*Id.* at 478 (record citation omitted). The conclusion was no different as to the plaintiff's contention that he had a right to recision of the mortgage under federal law, even though the matter was not explicitly addressed in the judgment.

> Unlike the adequacy of notice, the state court did not actually decide whether Mr. Crutchfield had a right to rescission under TILA. Consequently, we must determine whether that claim is inextricably intertwined with the state court judgment. The effect of the state court judgment was to foreclose the mortgage on the home that Mr. Crutchfield inherited from his mother. If he were to receive his requested relief, the district court would issue a declaratory judgment that he had validly rescinded the mortgage and thus removed the lien on the property. Mr. Crutchfield is thus asking a federal court to do precisely what *Rooker–Feldman* prohibits: to undo the effect of the state court judgment. He tells us as much when he characterizes the state court judgment as "a judicial nullity." Consequently, Mr. Crutchfield's

4

request for a declaratory judgment is inextricably intertwined with the state court judgment.

*Id.* at 1148-49 (record citation omitted).

This court has reached similar conclusions in FDCPA cases. In *Curnal v. LVNV Funding*, No. 10-2610-EFM, 2011 WL 2970816, *2 (D. Kan. July 20, 2011), the plaintiff claimed in part that the defendant violated the FDCPA by obtaining a state court judgment against her although it was not properly licensed under state law to collect on loans. The court concluded:

> These claims are inextricably intertwined with the prior state action in which Defendant collected on a loan from Plaintiff. The relief requested by Plaintiff would require this court to undermine the state court judgment in the loan collection action. Therefore, the *Rooker–Feldman* doctrine applies and this court must remand.

2011 WL 2970816 at *2.

In *McCammon v. Bibler, Newman & Reynolds*, 515 F.Supp.2d 1220, 1231 (D. Kan. 2007), the court found that the plaintiffs' FDCPA claim was not barred by *Rooker-Feldman* to extent they claimed their credit suffered from the defendants's failure to report a satisfaction of the debt. At the same time, however, the court concluded:

> To the extent plaintiffs' claim for actual damages is premised on the theory that Ms. McCammon's credit report was damaged as a result of the default judgment, the court agrees with defendants that *Rooker–Feldman* bars the court from asserting jurisdiction over the claim. That particular theory of damages asks the jury to conclude (as plaintiffs have alleged) that the judgment was obtained through fraud or improper means such that it never should have been entered and never should have appeared on Ms. McCammon's credit report and thus to return plaintiffs to the position they occupied prior to the judgment when they were offered financing at the lower interest rate. Under this theory, plaintiffs would have suffered no injury (in terms of actual damages) but for the state court judgment. The

5

> requested relief, then, would effectively "undo" the state court judgment and the court grants defendants' motion to dismiss to the extent plaintiffs' claim for actual damages stems from the judgment's affect on Ms. McCammon's credit report. *See Dickerson v. Bates*, 287 F.Supp.2d 1251, 1255 (D.Kan.2003) (plaintiff's claims seeking monetary damages attributable to losses he sustained as a result of the state-court judgment fell within ambit of *Rooker–Feldman* ), *aff'd*, 2004 WL 1510017 (10th Cir.2004); *see also Ellis v. CAC Fin. Corp.*, 6 Fed.Appx. 765, 769–70 (10th Cir. Mar.26, 2001) (where plaintiffs requested damages for, among other things, loss of credit, claims were barred by *Rooker–Feldman* in that they called into question the state court judgment).

*Id.* at 1229-1239.

As the plaintiff notes, there is some authority outside the Tenth Circuit reaching a contrary result. *See Sykes v. Mel S. Harris* & Assoc., 780 F.3d 70, 94-95 (2d Cir. 2015); *Hageman v. Barton*, 817 F.3d 611, 615-16 (8th Cir. 2016). However, the *Rooker-Feldman* doctrine as defined by the Tenth Circuit in *Crutchfield*, which the court is bound to follow, as well as *Curnal* and *McCammon*, supports the defendants' argument.

As in *McCammon*, the plaintiff "would have suffered no injury (in terms of actual damages) but for the state court judgment." Love's original Complaint alleged she was injured because the defendants acted "without proper notice to her," and that as a direct result of the lack of notice, she lost personal property in the residence "because she did not have an opportunity to remove [it]." (Dkt. 1, ¶ 39). According to the Complaint, the property was not seized by the law firm or the process server, but by Safeguard Property Management. (*Id.* ¶¶ 30-32). The Complaint directly alleges that "[t]he judgment of foreclosure and the judgment extinguishing redemption rights were void." (*Id.* ¶ 26).

The validity of service is also integral to the plaintiff's requested Amended

6

Complaint, in which she alleges that Aristocrat's affidavit erroneously reported an unsuccessful attempt to serve her at the residence, and that the affidavit was "subsequently used to justify publication service." (Dkt. 49-1, ¶ 64). She argues that the law firm should not have used service by publication rather than personal service (*id.*, ¶ 53), and that the foreclosure occurred "without proper notice to her" which directly caused her to lose her property. (*Id.*, ¶ 54). Plaintiff's proposed Amended Complaint discusses in detail her interpretation of Kansas rules of personal service and redemption rights. (*Id.*, ¶¶ 26-30). She repeats her contention that "[t]he judgment of foreclosure and the judgment extinguishing redemption rights were void in that MidFirst Bank did not obtain personal service and publication service was not justified by the returns that were filed." (*Id.*, ¶ 37).

A successful resolution of these issues would require directly repudiating the findings of the state court. The Sedgwick County District Court explicitly found that "each of the Defendant(s) has been served, or has otherwise voluntarily entered their appearance, and **the method of services is approved by the court**." Journal Entry of Judgment of Foreclosure, *Midfirst Bank v. Love*, No. 15CV2127, at 1 (Nov. 12, 2015) (emphasis added). The court further reported that "[p]roper Notice of Suit was published in *The Sedgwick County Post* and the publication is approved by the Court." (Id., at 2). Thus, the court concluded, "**[p]roper service has been had upon all of the parties named in the Petition**." (*Id.*) (emphasis added).

At the core of the plaintiff's argument is her claim that service of process in the state foreclosure was improper, and that as a result, the state court's judgments are "void."

7

Thus, "[w]ithout the injury caused by the judgments, plaintiff could claim no injury at all," and the *Rooker-Feldman* doctrine precludes this court from exercising jurisdiction over the matter. *See Market v. City of Garden City*, No. 16-1053-JTM, *3 (D. Kan. Aug. 23, 2016) (citing *Winslow v. Stevens*, 632 Fed.Appx. 721, 723 (3rd Cir. 2015)).

Because the court finds it is without jurisdiction to entertain the FDCPA action, it need not resolve the additional argument by the defendants that they were not acting as debt collectors for purposes of the FDCPA.

IT IS ACCORDINGLY ORDERED this 3rd day of March , 2017, that the defendants' Motions to Dismiss (Dkt. 27, 36, 38) are hereby granted; plaintiff's Motion to Amend (Dkt. 49) is denied, as the court would lack jurisdiction even with the proposed amendment; and Aristocrat's earlier Motion to Dismiss (Dkt. 9) is denied as moot.

                                                      s/ J. Thomas Marten
                                                      United States District Court Judge